THE PEOPLE ex rel. THE KNICKERBOCKER FIRE INSURANCE COMPANY, Appellant, v. MICHAEL COLEMAN et al., as Commissioners of Taxes and Assessments, Respondents.

Under the provision of the act of 1857 (§ 3, chap. 456, Laws of 1857), in reference to the taxation of the capital stock of certain corporations, which provides that such stock, after certain specified deductions, "shall be assessed at its actual value and taxed in the same manner as the other personal and real estate of the county," the method of ascertaining the actual value is left to the judgment of the assessors, and they have a right to resort to any and all of the tests and measures of value which were ordinarily adopted for business purposes in estimating values.

When the assessors have so exercised their judgment it is subject to no review or correction, except as prescribed by law.

Accordingly, _held,_ that in making such an assessment, the assessors were not limited to the market value of said stock less the statutory exceptions, and where they took as the measure of value the "book value," _i. e.,_ estimating all the assets as they appeared on the corporate books, deducting all the liabilities and other matters required to be deducted by law, that their action, if it did injustice to the corporation, was subject to review in the Supreme Court under the act of 1880 (Chap. 269, Laws of 1880); but that this court had no power to interfere with the assessment.

(Argued November 29, 1887; decided December 13, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 7, 1887, which affirmed the proceedings of defendants, the Commissioners of Taxes and Assessments of the city of New York, in assessing the capital stock of plaintiff, which proceedings were brought up for review on _certiorari._

It appeared that the relator's stock, at par, amounted to $210,000; the market-price of the shares was ninety cents. For the purpose of determining the actual value, the assessors valued the gross assets appearing on the company's books at $374,872; deducted therefrom the liabilities, $67,125, leaving the net value, $307,747; from this they deducted the assessed value of the company's real estate, United States stock and ten per cent on the capital, amounting, in all to $282,840, leaving a balance of $24,917, for which amount the relator was assessed.

*Esek Cowen* for appellant. The assessment should not exceed the market value of the capital stock, less statutory exemptions. (2 R. S. 992, pt. 1, chap. 13, tit. 2, art. 2, § 17, Laws of 1857, chap. 456, § 3; *Starch Co.* v. *Dolloway*, 21 N. Y. 458; *McMahon* v. *Palmer*, 102 id. 186; *People* v. *Com'rs, etc.*, 95 id. 554, 557, 561; *People ex rel* v. *Asten*, 100 id. 597; *People, etc.*, v. *Com'rs Taxes*, 31 Hun 32; *R. W. & O. R. R. Co.* v. *Smith*, 39 id. 332.)

*Geo. S. Coleman*, for respondent. The method of assessment adopted by the commissioners was in strict conformity with law. (Laws of 1857, chap. 456, § 3; *People* v. *Asten*, 100 N. Y. 597–602.) The respondents in placing an estimate on the capital and surplus of the relator, were engaged in the performance of a judicial duty, and it was incumbent on the relator to show affirmatively and beyond question, that the judgment of the commissioners was unwarranted. (*People* v. *Asten*, 100 N. Y. 600; *People ex rel. Bk.* v. *Com'rs*, 67 id. 521; *People ex rel. W. Ins. Co.* v. *Davenport*, 91 id. 584.) The market value of shares of stock of the corporation is not the proper and sole test of the value of the corporate capital. (*Albany Co. Nat. Bk.* v. *Maher*, 19 Blatch. 175, 178; *Van Allen* v. *Assessors*, 3 Wall 573, 583, 584.) In view of the fact that the commissioners accepted the relator's own figures in fixing the valuation of capital, it cannot be claimed that the valuation was excessive or unwarranted. (*People* v. *Asten*, 100 N. Y. 600.) All the deductions from the valuation of capital authorized by law, were allowed by the commissioners. (*People ex rel.* v. *Davenport*, 91 N. Y. 574, 582, 583; R. S. [7th ed.], 981, § 1; id., 982, § 3; Laws of 1883, chap. 392, § 1; 104 N. Y. 243.)

Earl, J. The relator claims that its capital stock was illegally and improperly assessed, and it instituted this proceeding for the purpose of correcting the assessment. The law regulating the assessment of the capital stock of such a corporation is found in section 3 of chapter 456 of the Laws of 1857, which is as follows:

"The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment-roll or as shall have been exempted by law, together with its surplus profits or reserved funds exceeding ten per cent of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company which are taxable upon their capital stock under the laws of this State, shall be assessed at its actual value and taxed in the same manner as the other personal and real estate of the county."

This section has been under consideration in this court several times, and its true construction and practical application have been found not to be entirely free from difficulty. (*Oswego Starch Factory* v. *Dolloway*, 21 N. Y. 458; *People* v. *Com. of Taxes*, 95 id. 454; *People* v. *Asten*, 100 id. 597.) The law does not prescribe how the actual value of the capital stock of a corporation is to be ascertained. That is left to the judgment of the assessors, and in appraising the actual value they have a right to resort to all the tests and measures of value which men ordinarily adopt for business purposes in estimating and measuring values of property. They may take into account the business of the corporation, its property, the value of its actual assets, the amount and nature of its present and contingent liabilities, the amount of its dividends and the market value of its shares of stock in the hands of individuals. They may resort to any or all of these as to them seems best, and they are not confined to one of them. They may take that test which they think will be most likely to give them the actual value of the stock, and they may disregard all the others. They are not bound to seek for all the evidence which bears upon value; that would be impracticable. The law commits the matter to their judgment and when they have exercised that, it is subject to no review or correction except as prescribed by law.

One mode of arriving at the actual value of the capital stock of a corporation is to take what is sometimes called the book value, which is reached by estimating all the assets as they appear upon the corporate books, and deducting all the liabili-

ties and other matters required to be deducted by law, and taking the balance as the measure of value for assessment. This seems to be a proper method for arriving at the value of the capital stock in the case of a corporation which is about to discontinue business, wind up its affairs and distribute its assets among its shareholders. But it cannot always, or usually, be a fair or correct method of assessment in the case of a going corporation whose assets are to remain at the risk of its business. In the case of an insurance company, the actual value of its capital stock must usually be less than the book value, and the same must frequently be true of other corporations which are engaged in business attended with many hazards and fluctuations. In the case of a corporation the value of whose capital st )ck is largely made up of its franchise, good will and business a( vantages, the book value of its capital stock will be less than ' e actual value. Hence it would not be just for assessors always, or even generally, to take the book value of the capital stock of going corporations as the measure of value for the purpose of assessment.

So the market value of the shares of capital stock may sometimes be above and sometimes below the actual value. Such value may be greatly enhanced or depressed for speculative purposes without any change in the actual value. But the market value of any stock which is listed at the stock exchange in New York, and largely dealt in from day to day for a series of months will usually furnish the best measure of value for all purposes. The competition of sellers and buyers, most of them careful and vigilant to take account of everything affecting value of stock in which they deal, and each mindful of his own interests, and seeking for some personal gain and advantage, will almost universally, if time sufficient be taken, furnish the true measure of the actual value of stock. But there is no law which compels assessors to resort to market value to find the actual value of capital stock. That standard is sometimes illusory and untrustworthy. The buyers or sellers may be too few and the transactions not sufficiently numerous to furnish a real test of value.

Here the commissioners of assessment appear to have taken, as the measure of the actual value of this stock, the book value, and they disregarded the market value. By doing this they may have done, and probably did do, injustice to the corporation. That injustice was subject to review in the Supreme Court under chapter 269 of the Laws of 1880. That court had the power to correct any assessment if it found it to be "illegal, erroneous or unequal," and it could supervise the judgment of the commissioners. This court exercises no such power, and even if we should think the commissioners erred in their judgment, as to the actual value of the capital stock, by taking one test of value when another would in our opinion have been better, no absolute rule of law being violated, we would still have no power to interfere with the assessment. (*People* v. *Hicks*, 105 N. Y. 198.) If they had taken a standard of value which was not in fact any measure of value, the case would have been different.

It follows from these views that the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.