THE PEOPLE, ex rel. THE TWENTY-THIRD STREET RAILROAD COMPANY, Appellant, *v.* THE COMMISSIONERS OF TAXES OF THE CITY OF NEW YORK, Respondent.

The general purpose of the statutes relating to assessments and taxation is to secure an assessment of all property, real and personal, at its actual value, and they are to be construed and enforced with this purpose in view.

An intent to exempt any property, or any portion of the value of any property, may not be presumed, but must be found plainly expressed in the statutes.

Under the provisions of the act of 1857 (Chap. 456, Laws of 1857), in relation to the taxation of corporations liable to taxation, for the purpose of taxing the capital stock of a corporation, it is to be "assessed at its actual value," from which is to be deducted "the assessed value of its real estate" and such other items as are specified in the act.   (§ 3.)

The provisions of the prior statutes regulating the details of assessments of the property of corporations (1 R. S. 415, § 6, as amended by chap. 654, Laws 1853) are to be deemed amended so far as is necessary to make them conform to and to give effect to the act of 1857.

*It seems* that the assessment-roll in such case may be made up substantially as follows: In the first column insert the name of the corporation; in the second, the quantity of real estate owned by it situate in the town or ward ; in the third, the assessed value of its real estate ; in the fourth,

the value of capital stock after making the exemptions and deductions required by the act of 1857.

*It seems* also that to arrive at the assessed value of the real estate not situate in the town or ward, if within the State, it may be ascertained from the proper assessment-rolls ; if in another State or country, or if for any other reason its assessed value cannot be ascertained, the price paid, in the absence of proof or of any other standard, may be taken as the assessable value.

(Argued March 21, 1884 ; decided April 15, 1884.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, made February 1, 1884, which affirmed an order of Special Term affirming the proceedings of the commissioners of taxes and assessments of the city of New York in assessing the capital stock of the relator for the year 1882.

*John H. Strahan* for appellant.    The provisions of the Revised Statutes for the separate assessment and taxation of real and personal estate are applicable to corporations as well as individuals.    (1 R. S. [3d ed.], chap. 13, title 1 ; id., chap. 13, title 2, art. 1, § 6 ; id., chap. 13, title 4 ; id. 442, § 3 ; 443, §§ 6, 8 ; 444, § 9 ; 469, § 2 ; *People* v. *Bd. Assrs.*, 39 N. Y. 84 ; Laws 1853, chap. 654, § 10.)    The real estate of the corporation was to be assessed and taxed as other real estate.    (*Mohawk & H. R. R. Co.* v. *Bk. of Utica and City of Utica*, 4 Paige, 399, 401, 402 ; *F. L. & T. Co.* v. *Mayor, etc.*, 7 Hill, 261 ; *Utica Cotton Mfg. Co.* v. *Suprs. Oneida Co.*, 1 Barb., chaps. 432, 448.)    The real estate investment of a corporation should be first deducted from the real estate with the other deductions provided for, and only the remainder of the capital stock was to be assessed as personal property at its actual value and taxed as personal estate.    (*People* v. *Assrs.*, 39 N. Y. 85.)

*James C. Carter* for respondent.    Taxes are not imposed upon property but upon the owners in respect of the property owned by them.    (*People, ex rel. Bk. of Commonwealth*, v. *Commrs. of Taxes*, 23 N. Y. 192, 196.)    Chapter 390 of the Laws of 1823 contemplated that the capital stock of a corpo-

ration taken at its par value should be assessed and taxed as personal estate, making the prescribed exceptions for realty, etc. (*Bk. of Utica* v. *City of Utica*, 4 Paige, 399; *People, ex rel. McMasters*, v. *Suprs. of Niagara*, 4 Hill, 20; *F. L. & T. Co.* v. *City of N. Y.*, 7 id. 261.) In 1830 the legislature provided that manufacturing and turnpike companies should be taxed on the " cash value " of their stock, which was to be ascertained " by sales of the stock or in any other manner." (R. S., part 1, chap. 13, title 4, § 7.) It was intended by the act of 1853 to reach the surplus of corporations for purposes of taxation. (Laws 1853, chap. 654, p. 1240.) The expression " actual value " in the act of 1857 (Chap. 456), should be given the same meaning as " cash value " as used in the statute of 1830. (*Oswego Starch Factory* v. *Holloway*, 21 N. Y. 449, 459–462.)

EARL, J. The capital stock of the relator was $600,000, worth fifty per cent above par, and therefore of the actual value of $900,000. It had paid out and invested in real estate $515,000. The defendant, in making the assessment against the relator on account of its capital stock, deducted the latter sum from the former, and fixed the amount of the assessment at $325,000, whereas the balance was $385,000, which, upon the view of the law adopted by it, should have been the amount of the assessment. The relator claims that under the statutes the assessment should have been made by first deducting from the nominal amount of the capital, to-wit, $600,000, the real estate item, $515,000, and then by adding to the balance $85,000, fifty per cent for premium upon the stock, so as to reach its actual value, and that thus the assessed value should have been fixed at $127,500.

We are to determine which of these methods accords with the statutes, and the question is made somewhat difficult of solution by the very bungling and confused manner in which the statutes are worded.

It is the general purpose of the statutes relating to assessments and taxation, to secure an assessment upon all property,

real and personal, at its actual value, and they must be construed and enforced with this purpose constantly in view. An intent to exempt any property, or any portion of the value of any property, from taxation must not be presumed, but must be found plainly expressed in the statutes.

Section 3 of chapter 456 of the Laws of 1857 provides the measure of taxation against corporations, and it is as follows: " The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment-roll, or as shall have been exempted by law, together with its surplus profits or reserved funds exceeding ten per cent of its capital after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company, which are taxable upon its capital stock under the laws of this State, shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county."

There is a most extraordinary confusion of ideas in this section. What is meant by the clause, " except such part of it (capital stock) as shall have been excepted in the assessment-roll " ? I know of no law which authorizes any such exception to be made in the roll. Then the section, literally read, requires that an actual valuation shall be placed both upon capital and the surplus, and yet surplus is always included in and goes to make up the actual value of the capital. Notwithstanding the language, it could not have been intended that capital should be assessed at its actual value, and that in addition thereto the surplus, less the ten per cent, should also be included in the assessment at its actual value, thus making a double assessment of surplus. (*Oswego Starch Factory* v. *Dolloway*, 21 N. Y. 449, 459, 461.) So, too, literally read, the section requires that the value of the real estate and the shares of stock in other corporations shall be first deducted from the nominal capital and that the balance of the capital shall be assessed at its actual value. This literal reading in all cases where the stock of a company is worth just par will make the statute work with absolute fairness; but in all other cases

it will lead to the most absurd results.   Suppose a corporation has a capital of $200,000, worth fifty per cent above par, $300,000, and has invested in real estate $100,000, it should justly be taxed on account of its capital $200,000, and on account of its real estate $100,000.   But the literal reading requires the deduction to be made from the nominal capital, and thus there is left of that for taxation only $100,000, of the value of $150,000, a loss of taxable value of $50,000.   But suppose instead of being worth above par, the stock is worth fifty per cent below par, then upon the same hypothesis we have this result: Actual value of the stock, $100,000; deduct value of real estate and there is nothing left for taxation as capital. The assessment is $100,000 upon real estate, and that equals the whole value of the capital, and the assessment could not justly be more.   But first deduct the value of the real estate from the nominal capital and there remains $100,000 to be assessed at its actual value, to-wit, $50,000, which is manifestly unjust.   Take another case : Suppose that the capital stock is $200,000, one hundred per cent above par, actually worth $400,000, and that the value of the real estate is $200,000. Then if that be deducted from the value of the stock, there will be left for assessment and taxation $200,000, a perfectly just result.   But ·if it be deducted from the nominal amount of capital, there will be no capital left for taxation, and $200,000 of value will escape taxation.   Thus if the value of the real estate be deducted from the nominal amount of the capital and the balance of the capital be assessed at its actual value, the operation of the statute is always unjust and unfair in all cases where the capital stock is worth more or less than par, and could not have been intended by the legislature.   *

It is the object of all interpretation and construction of statutes to ascertain the intention of the law makers, and this is generally accomplished by a literal reading of the words used.   But there are many cases where the words do not express that intention perfectly, but exceed it or fall short of it, and then it is allowable to adopt what writers upon the civil law sometimes call a rational interpretation and to collect the in-

tention from rational or probable conjecture only. It is also a rule sometimes laid down by text writers that whenever it happens that the sense of the law, how clear soever it may appear in the words, would lead to false consequences and unjust decisions, the palpable injustice which would follow from its literal sense compels an effort to discover some kind of interpretation, not what the law literally says, but what it means. Lieber, in his Legal and Political Hermeneutics (p. 11), very aptly defines interpretation as "the art of finding out the true sense of any form of words — that is, the sense which their author intended to convey — and of enabling others to derive from them the same idea which the author intended to convey." And he defines construction as "the drawing of conclusions respecting subjects that lie beyond the direct expressions of the text, from elements known, from and given in the text — conclusions which are in the spirit though not in the letter of the text." A construction of a statute which leads to an absurd consequence must always be avoided, as an absurd purpose is not to be attributed to the law makers. (*Commonwealth* v. *Kimball*, 24 Pick. 370.)

With these principles of interpretation and construction in mind, we may again recur to the section, and we find that its main purpose is to provide that the capital stock of corporations "shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county," making the exception and deductions mentioned; and leaving out what is not now material it may be read as follows : The capital stock of every company shall be assessed at its actual value "after deducting the assessed value of its real estate," thus transposing the latter clause so as to give it its true effect, or that clause may be put in a parenthesis and have the same effect.

But there is some further confusion and difficulty caused by the inapt language of section 6 of title 4, chapter 13, part 1 of the Revised Statutes, as amended by chapter 654 of the Laws of 1853, which regulates the duty of the assessors in making up their assessment-rolls, so far as they relate to incorporated

companies.    The first subdivision of that section provides that they shall insert in the first column the name of each corporation, and specify the amount of its capital stock, "the amount paid by such company for real estate," "the amount of all surplus profits or reserved funds exceeding ten per cent of their capital after deducting therefrom the said amount of said real estate."    Subdivision 2 provides that in the second column they shall enter the quantity of real estate owned by such company in the town or ward, and in the third column the actual value thereof.    Subdivision three provides that in the fourth column they shall enter the amount of the capital stock of every incorporated company, and of all surplus profits or reserved funds exceeding the ten per cent, after deducting the sums paid out for all the real estate of such company.    That section should have been amended in 1857 so as to bring it into harmony with section 3 of the act of that year, as we have above construed it.    But it was not in terms amended, and its incongruities were present to the mind of Judge DENIO when he wrote his opinion in *Oswego Starch Factory* v. *Dolloway* (*supra*), where, speaking of the act of 1857, he said: "That act, it is true, does not go into detail as to the form of the roll; but if the intent be clear, as we think it is, to assess the capital at its real, as distinguished from its nominal value, the form can easily be accommodated to give effect to the intention. Such a reconciling construction is often required to be given to remedial and administrative statutes which are sometimes drawn up in haste and without prescribing the manner in which the directions of the legislature are to be carried out."

All of that which is required by subdivision 1 of section 6, except that the name of the corporation shall be inserted in the first column of the roll, seems to be practically useless, as all the other matters there specified are provided for in the other subdivisions.    Subdivision 2 requires that in the second column shall be entered the real estate within the town or ward; and in the third column, not the cost, but the actual value thereof.    The third subdivision directs that in the fourth column shall be entered "the amount of the capital stock,"

etc. Construing this language so · as to make it harmonize
with section 3 of the act of 1857, it should be held to mean
the value of the capital stock; and the requirement that "the
sums paid out for all the real estate" should be deducted, must
mean that the assessed value of all the real estate must be de-
ducted. In that respect the subdivision must be deemed to
have been amended or altered by implication by section 3 above
referred to, as there the assessed value of the real estate is re-
quired to be deducted. By the prior subdivision the real estate
for taxation is to be entered at its value, and the law cannot
be administered so as to work justly and fairly without deduct-
ing the same value for the purpose of reaching the balance to
be assessed as capital. If the capital be assessed at its actual
value, and then the price paid for the real estate be deducted, an
unjust result will always follow when the assessed value of the
real estate is more or less than its cost; if it be more, then the
combined assessment for capital and real estate will be more
than the actual value of the capital. If it be less, then the
combined assessment will be less than the actual value of the
capital, and thus the assessment would be more in the one
case than it ought to be, and in the other less.

Section 3 is the latest expression of the legislative will, and
furnishes the measure of taxation of corporations, and is the
dominant controlling statute. Section 6 is simply administra-
tive, providing for carrying into effect section 3, and specifying
the manner in which the property is to be set down in the
assessment-roll. The latter section, and other sections regulat-
ing the details of assessments, must, therefore, be deemed
amended by implication so far as is necessary to make them
conform to the former and to give effect thereto.

We think the assessment-roll may, therefore, be made up
substantially as follows: In the first column insert the name
of the corporation; in the second the quantity of real estate,
in the town or ward; in the third column the assessed value
of the real estate, and in the fourth column the value of the
capital stock after making the exemptions and deductions re-

quired by section 3 referred to ; and thus effect will be given to the manifest intention of the legislature.

There is a practical difficulty yet to be referred to. It will not always be easy to determine the assessed value of the real estate to be deducted from the actual value of the capital stock. There can be no difficulty when the real estate is situated in the same ward or town where the capital stock is assessable, or even when it is situated in the same city or county. In most cases it will thus be situated, but if it is not, and is yet within the State, it will not be impracticable to ascertain its assessed value, from assessment-rolls always accessible. But if the real estate should be in another State or country, or if, for any other reason, its assessed value cannot be obtained, then as the best and nearest substitute for it, the price paid, as the presumed value in the absence of proof or of any other standard, may be taken as the assessable value.

We have not overlooked the fact that some of these views are in conflict with those expressed by MASON, J., in the case of *People, ex rel. Citizens G. L. Co.,* v. *Board of Assessors* (39 N. Y. 81). All that was there said was not necessary to the decision of that case, and we think the construction we have given to the statutes is more likely to give just results, and to effectuate the intention of the law-makers.

The order should, therefore, be affirmed, with costs.

All concur.

Order affirmed.